George Alcala **GONZALES**, Appellant,

v.

**Loyd J. GILLIAM et ux., Appellees.**

No. 4651.

Court of Civil Appeals of Texas,
Eastland.

Feb. 8, 1974.

R. Temple Dickson, Mays, Moore, Dickson & Roberts, Inc., Sweetwater, for appellant.

Richard J. Clarkson, Warren Burnett Associated, Odessa, for appellees.

RALEIGH BROWN, Justice.

Appealed from the 32nd Judicial District Court of Nolan County.

Loyd J. Gilliam and wife, Alta, seek damages from George Alcala Gonzales resulting from an automobile collision in Sweetwater, Texas. The Gonzales vehicle, driven by George Alcala Gonzales, struck the Gilliam vehicle, driven by Loyd J. Gilliam, from the rear as it attempted a left turn. Upon jury findings to special issues, judgment was rendered favoring Mrs. Gilliam. Gonzales appeals.

Before this court, Gonzales primarily urges the error of the trial court in admitting the medical records of Alta Gilliam from Medical Center Hospital in Odessa, Texas, and the statements and opinions of two doctors contained therein. He con-

tends the records were inadmissible for two reasons: (1) the procedures required by Article 3737e, Vernon's Ann.Texas Civ.St., were not followed and (2) the evidence contained in the records was objectionable substantively.

■ The procedural complaint is that at the time of the trial Section 5, Article 3737e, required that the records be sent with an affidavit and "must be sealed and filed in the manner of depositions, among the depositions, in the manner of depositions in the case as provided by Rule 198, Texas Rules of Civil Procedure." Rule 198 provides:

"Depositions may be returned to the court either by mail, or by a party interested in taking the same, or by any other person. If returned by mail, the clerk or justice taking them from the postoffice shall indorse on them that he received them from the postoffice, and sign his name thereto."

Since there was no notation on the affidavit that it was received by the clerk from the mail, Gonzales contends that such failure to comply with the rules makes the affidavit inadmissible thus vitiating the admission of the medical records. We disagree.

The affidavit of the medical records librarian of Medical Center Hospital complies with the suggested form in Article 3737e (7), V.A.T.S. The file mark of the District Clerk of Nolan County shows that the affidavit together with the accompanying medical records were filed some 75 days prior to the trial of this cause. Gonzales does not claim fraud on the part of anyone nor that the records were tampered with or altered.

It has been stated in Utilities Indemnity Exchange v. Burks, 7 S.W.2d 1112 (Tex. Civ.App.—San Antonio 1928, writ dismissed):

" . . . it is not hinted that there had been any tampering with the deposition or any fraud connected with the correction of the jurat or the delivery of the deposition. The law was substantially complied with, the details required in the return of depositions being merely to guard them from alteration and to secure the safe delivery to the court. A reasonable compliance with the law is sufficient in the absence of any charge of fraud. Pipe Line Co. v. Construction Co. (Tex.Civ.App.) 238 S.W. 331; Davis v. Adkins (Tex.Civ.App.) 251 S.W. 285. As said by Chief Justice Conner in the case first cited, where he held a substantial compliance with the statute was sufficient:

'To hold otherwise would be to give greater effect to the letter of the law rather than to its substance and spirit.' "

Appellant's contention is overruled.

■ One of the items included in the medical records of Mrs. Gilliam was a report of Doctor Brantley, dated July 30, 1971, wherein the doctor stated in his final diagnosis that she had a "cervical disc (December 1970)" appellant contends such opinion is not admissible because:

" . . . it is not couched in terms of a reasonable degree of medical probability, or the doctor's opportunity of having a reasonable degree of medical probability, as to the existence or non-existence of that condition."

The medical records show that a cervical laminectomy was performed on Mrs. Gilliam December 8, 1970; the surgeon's detailed description of the operation plus his postoperative treatment and opinions are included. This demonstrative medical evidence erases the uncertainty of the opinion of Doctor Brantley, and establishes its admissibility by the standard announced in Loper v. Andrews, 404 S.W.2d 300 (Tex. Sup.1966), as an opinion resting in reasonable medical certainty.

■ Gonzales next challenges the admissibility of Doctor Manicon's report of

June 7, 1971, which was a part of the medical records. The report includes the opinion "possible so-called occipital nerve neuralgia but hate to make this diagnosis." The contention is made that the record shows "the doctor was hesitant to make the diagnosis and that it is doubtful, and certainly not based on a reasonable degree of medical probability."

A part of the Manicon report of June 7, 1971, states:

"I saw this woman in my office on 5/20/71 for the headaches which were in the distribution of the left greater occipital nerve but she did not mention the staggering at that time, stating now that she merely forgot it. This has been present apparently for about one month. The patient's headache is in the left occipital region they were at the time of the office visit and they are accentuated by palpation over the greater occipital nerve. Examination at this time fails to reveal any neurological deficit with specific reference to inner ear or cerebellar dysfunction with the staggering and dizziness."

When considered as a whole the report confirms a reluctance on the part of Doctor Manicon to make the diagnosis "occipital nerve neuralgia" because of a lack of medical evidence of damage to the occipital nerve. The opinion of Doctor Manicon in the report, therefore, did not prove or disprove any fact harmful to Gonzales.

Our Supreme Court in Otis Elevator Company v. Wood, 436 S.W.2d 324 (Tex. Sup.1968), stated:

"An entry in a hospital report should not be excluded, and Article 3737e held inapplicable, on the grounds that the opportunity to cross-examine has been denied, unless there is a need to disprove what the entry tends to establish. In the case before us, the doctor's uncertainty as to when the attack occurred does not tend to establish any fact that would be damaging to Otis' position. We hold that the report was admissible."

We overrule the point of error.

■ The jury found Gonzales negligent in various particulars and found Gilliam negligent in failing to signal his left turn. The acts of each were found to be a proximate cause of the accident. Gonzales contends the trial court, knowing that the element of earning capacity of the wife would be barred by the contributory negligence of the husband, erred in its submission of the damage issue. Gonzales urges that the court's inquiry as to past and future physical pain, mental anguish and "physical impairment" permitted the jury to grant a double recovery since physical impairment could include loss of earning capacity because the record included evidence of loss of earning capacity. The awards of the jury to Mrs. Gilliam for "loss of household services" past and future were disallowed by the court because the jury found her husband was contributorily negligent.

Gonzales' objection to the charge of the court prior to its submission to the jury was:

"Defendant objects to the submission of Special Issue Number 9 (the issue on damages) for the reason that the same permits the jury to consider elements of damage which are not lawfully recoverable, to-wit: physical impairment, it being inferable that physical impairment could include loss of earning capacity."

On motion for new trial, Gonzales challenged the existence or sufficiency of the evidence concerning the issue of physical impairment but does not bring forward such alleged error by point of error.

When considering whether an issue awarding damages due to physical impairment and also for diminished capacity permitted the jury to make a duplicate award, the court in Riley v. Norman, 275 S.W.2d

208 (Tex.Civ.App.—El Paso 1954, ref'd n.r. e.), stated:

"Physical impairment and diminished capacity to work and earn money do not necessarily imply one and the same thing. Diminished capacity to work and earn money may and ordinarily does result from physical impairment, but physical impairment does not necessarily result in diminished capacity to work and earn money. It depends on the nature of the impairment and the nature of the work. . . Physical impairment, as well as the result, diminished capacity to work and earn money, were both proper elements of damage. The physical impairment with its accompanying pain and suffering was a scar on the forehead and at least a temporarily swollen knee. Norman was entitled to recover for these injuries even had there been no diminution of his earning capacity because of them. Houston Transit Company v. Felder, 146 Tex. 428, 208 S.W.2d 880; 13 Tex.Jur. p. 170, Sec. 79."

The facts of the case at bar establish that Mrs. Gilliam sustained a cervical disc injury as a result of the accident. The court stated in Mikell v. La Beth, 344 S. W.2d 702 (Tex.Civ.App.—Houston 1961, ref'd n.r.e.), when considering a challenge to a damage issue that physical impairment and loss of earnings allowed a double recovery:

"In the instant case there is evidence which would support a finding that appellee suffered a ruptured disc in the cervical spine . . . resulting from the injury. This constituted a physical impairment which did not necessarily affect appellee's capacity to labor and earn money. We think there was no necessary duplication of elements of damage in the issue."

In considering a point similar to the one urged by Gonzales, the court in Green v. Baldree, 497 S.W.2d 342 (Tex.Civ.App.—Houston (14th Dist.) 1973, no writ hist.) stated:

". . . there is authority for the proposition that allowance of a recovery for physical impairment as well as for lost earning capacity and pain does not necessarily constitute the allowance of a double recovery. Other cases that support that conclusion are Charles T. Picton Lumber Company v. Redden, 452 S. W.2d 713 (Tex.Civ.App.—Corpus Christi 1970, writ ref'd n.r.e.); Mikell v. La Beth, 344 S.W.2d 702 (Tex.Civ.App.—Houston 1961, writ ref'd n.r.e.); and Riley v. Norman, 275 S.W.2d 208 (Tex. Civ.App.—El Paso 1954, writ ref'd n.r.e.).

It would not be proper in every personal injury case to instruct the jury that it might consider loss of earning capacity, pain and physical impairment as separate elements of plaintiff's damage. In order to be entitled to that submission the plaintiff must sustain the burden of proving that the effect of his physical impairment extends beyond any impediment to his earning capacity and beyond any pain and suffering to the extent that it produces a separate and distinct loss that is substantial and for which he should be compensated. The defendant in this case did not, by objection to the charge, motion for new trial or point of error, challenge the existence or sufficiency of this evidence to discharge that burden. Also, in almost all of such cases, if not all of them, the defendant would be entitled, on request, to have the court submit a special instruction that would be calculated to prevent the jury from allowing a double recovery. However, before a defendant could successfully complain of the court's failure to submit that special instruction he would have to tender it in substantially correct form and request its submission. Frontier Feedlots, Inc. v. Conklin Bros., Inc., 476 S.W.2d 31 (Tex.Civ.App.—Amarillo 1971, no writ); Tex.R.Civ.P. 273 and 279."

We overrule Gonzales' contention.

We have carefully considered all points of error and overrule them. The judgment is affirmed.